## In re BULL.

United States District Court,
D. Nevada.
August 9, 1954.

Samuelson & Johnson, Reno, Nev., for respondent.

Madison B. Graves, U. S. Atty., Las Vegas, Nev., amicus curiae, for the Court.

GOODMAN, District Judge (sitting by special designation.)

This proceeding was initiated by an order directing respondent attorney to appear and show cause why he should not be disbarred from practicing before this Court. The order was prompted solely by certain statements reflecting unfavorably upon the Court, contained in a letter written by respondent to a client. This letter was mailed from Reno, Nevada, where respondent maintains his office, to the client, Albert Adelman, while Adelman was in custody in the Las Vegas County Jail following his conviction and sentence upon a federal criminal charge. Respondent had defended Adelman at the trial of the criminal charge before this court in Las Vegas a few days previously. The letter was written for the purpose of advising Adelman regarding the taking of an appeal. When the letter arrived at the Las Vegas County Jail, it was opened by the jailor and given to a deputy United States Marshal. The marshal showed the letter to Judge Foley of this Court, who had presided at Adelman's trial. The Judge directed that the letter be photostated. Thereafter the letter was delivered to Adelman. The photostatic copy of the letter is appended to the order to show cause. It reads as follows:

"Dear Al:

Sorry I was unable to be present at the time of your sentencing.

I have decided, after giving the matter thorough consideration, that it would be advisable to appeal your case. Frankly, Al, I doubt very much whether we would be able to succeed in an appeal, because experience has shown us that the records of any trial in Foley's court are emasculated when an appeal is taken. Furthermore, Foley has a very dear friend on the circuit court of appeals. Nevertheless, it is worth giving it the old college try, and I am so mad at the conduct of Foley at the trial, that I would go to great lengths to secure a reversal.

This does not mean that it will be unnecessary for you to start serving your sentence. Needless to say you should start serving your sentence as soon as possible.

In the meantime, best of luck— and if you happen to be passing through Reno, maybe I will be able to see you again.

Yours very truly
Samuel T. Bull."

In response to the order to show cause, respondent appeared in person and by counsel and moved to suppress the letter as evidence upon the dual ground that it was a privileged communication between attorney and client and that it had been obtained by a search and seizure prohibited by the 4th Amendment to the United States Constitution. He also moved to dismiss this proceeding upon the ground that an order of disbarment cannot be predicated upon statements made in confidence to a client regarding the conduct of a pending cause. The motions, as well as the merits, have been submitted for decision.

■ Upon the grounds asserted by respondent, the motion to suppress is without merit. The letter does not qualify as a privileged communication between attorney and client. The modern rationale of the attorney-client privilege, as recognized in the law of evidence, is to encourage the client to confide freely with his attorney so that the attorney may know all the facts necessary to advise the client competently. Consequently the privilege extends only to communications concerning matters confided by the client to his attorney. It is a protective device available only to or on behalf of the client. Zenith Radio Corp. v. Radio Corp. of America, D.C., 121 F.Supp. 792; 8 Wigmore on Evidence §§ 2290–2 and 2317 (3rd Ed. 1940). 63 Yale Law Rev. 1038. Not one word in the letter refers to any fact which respondent learned from Adelman.

■ The opening and inspection of the letter at the Las Vegas County Jail was not an illegal search and seizure in violation of the 4th Amendment. Prison authorities, of necessity, have the right to censor prisoners' mail. The 4th Amendment does not sanction an unrestricted channel of communication behind prison walls. Stroud v. United States, 1919, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103; Adams v. Ellis, 5 Cir., 1952, 197 F.2d 483.

Neither as a privileged document, nor because of unlawful search or seizure, may the letter be suppressed. Consequently the motion to suppress is denied.

But, under the circumstances of this case, the admissibility in evidence and propriety of the use of the Adelman letter, pose a serious and indeed unique question. Principles of public policy will dictate its resolution.

In support of the motion to dismiss, respondent contends for a broad rule. He urges that no private communication from an attorney to a client, concerning the fitness of the Court to rule upon the client's cause, is admissible in a disciplinary proceeding against the attorney. He cites as authority, Ex parte Cole, Iowa 1879, 6 Fed.Cas. pp. 35, 39, No. 2,973. In that case, which involved different and more complicated facts, the Court, referring to a communication from an attorney to his client, which was derogatory to the Court, said: "That is one of the class of communications between attorney and client which the patrons of the law should and must protect, for any other rule would work a restriction in the freedom of intercourse between them more injurious to the sound administration of justice than the effects of any mistaken opinion or even false misrepresentation of the attorney." In the field of broad public policy, this may be, in a general sense, a sound rule. But, in my opinion it cannot have over-all application, particularly, where, as here, the facts do not justify it.

For attorneys can do much harm by reckless and unfounded statements discrediting the courts. Though such statements may be made in private to a client, it is unrealistic to suppose they will go no further. The opinions of an attorney concerning the courts are apt to be accepted at face value by the layman. The result is the undermining of public confidence in our judicial system. In these times, when it seems to be the fashion to hurl charges with reckless abandon, some thought at least should be given to upholding the honor and the integrity of our courts.

Certainly no such general immunity as to all communications, private or otherwise, by attorney to client, as is approved in the Cole case, is warranted. But other and narrower considerations do require our attention in this case.

Here the contents of the Adelman letter became known as the result of an intrusion by prison officials into the confidences of an attorney and a defendant in a criminal case.

A defendant in a federal criminal prosecution is constitutionally guaranteed the effective assistance of counsel. This guarantee requires that the relationship of the defendant and his counsel be safeguarded from interference which may impair the effectiveness of such assistance. Nothing is more likely to impair the effectiveness of an attorney than the inability to communicate freely and privately with his client. This the courts have recognized by the imposition of drastic sanctions when the privacy of an accused and his counsel is invaded. Deliberate eavesdropping by the prosecution has been considered sufficient to void a conviction even without a showing of prejudice. Coplon v. United States, 1951, 89 U.S.App.D.C. 103, 191 F.2d 749.

■ When an accused is in custody, restrictions upon his freedom to communicate privately with his counsel cannot be avoided. Some opportunity for private consultation can and must be

afforded.[1]  But, security may require considerable supervision over a prisoner's contacts with his attorney, including the censorship of their correspondence.  An imprisoned defendant and his counsel can never feel secure against eavesdroppers.  At best, the jailhouse affords a hostile atmosphere for the exchange of confidences.

■  If a measure of the privacy, to which a defendant and his counsel are entitled, is to be preserved for those in custody, disclosure by jailors of their intercepted confidences should be foreclosed.  The protection of the attorney from such disclosure is, of course, justified only in so far as his legitimate assistance to the defendant may thus be encouraged.  Ordinarily an attorney should not fear disclosure of any proper advice given to a client in a criminal cause.  But in the area where his advice may touch upon the attitude or conduct of the court, the possibility of disciplinary action may well cause him to hesitate to speak when he should.  As long as judges are human, there may be occasions when an attorney may honestly believe that prejudices exist on the part of a judge which may have a bearing on the presentation of his client's cause.  There may be times when an attorney believes the court to be biased.  He may feel that the court has other deficiencies which should be taken into account in the conduct of the case.  He should be free to discuss such matters with an imprisoned client without fear of exposing himself to disciplinary or contempt proceedings.

■  In my opinion, a private communication, as in this case, by an attorney advising his client, who is in custody on a criminal charge, *about the conduct of his defense*, if intercepted by prison officials, cannot properly be made the basis for disciplinary action against the attorney.

It must be recognized that two fundamental principles of public policy, here antagonistic to one another, meet and must be reconciled.  On the one hand, is the Constitutional guarantee of protected attorney client relationship in criminal cases.  On the other is the public policy for the safeguarding of the integrity of the courts.  Different cases may require a different reconciliation of these principles.  In this case, the interests of justice, in my opinion, justify the ruling made.

Since the proceeding stands upon the Adelman letter, the order to show cause should be discharged and the cause dismissed.

It should be said that immediately upon receipt of the order to show cause, respondent wrote to Judge Foley,[2] stat-

---

1.  For cases discussing the right of defendants who are in custody to consult freely and privately with their counsel see: People v. Zammora, 2d Dist.1944, 66 Cal. App.2d 166, 226, 152 P.2d 180; In re Qualls, 2d Dist.1943, 58 Cal.App.2d 330, 136 P.2d 341; In re Snyder, 2d Dist. 1923, 62 Cal.App. 697, 217 P. 777; In re Rider, 2d Dist.1920, 50 Cal.App. 797, 195 P. 965.

2.  March 23, 1954
Honorable Judge Roger T. Foley
Federal District Court
Las Vegas, Nevada.

Dear Judge Foley:

I was just served with a Citation to Show Cause why I should not be disbarred in the Federal Courts.  Frankly, I am somewhat bowled over by the production of a confidential communication between me and my client which is relied upon in this action.  It appears to me that no one is safe, these days, from the meddlings and snooping of the FBI.

I do not plan to defend myself.  If you regard the letter as sufficient grounds upon which to disbar a man and ruin his career, then that rests with you.

However, I do wish to retract what was said and implied in the letter from me to Adelman, and also apologize for the letter.  I have long regarded you as an eminently fair jurist, and *you* know that has been my opinion for a long time.  I wrote that letter to Adelman in the heat of anger and disappointment and would not have had you know of the contents therein for the world—because I would not do anything to hurt your feelings for the world, in the first place; and in the second place, what I said was not true. I'm very sorry I said those things—not because I am afraid of being disbarred—

ing that what he had written in the letter to Adelman was not true, and apologizing with contriteness.  Upon the hearing of the order to show cause, he testified that the letter had been written in the heat of anger and disappointment at the outcome of Adelman's trial, and again apologized for the untruthful statements which he had made concerning the court.

The Court does not condone the language of the letter.  It was scurrilous and contemptuous.  But in view of the private nature of the communication, the state of mind of respondent at the time, his contriteness and prompt apology, the Court feels impelled to say that, if the merits were reached, any sanction imposed would necessarily be substantially less than suspension or disbarment.

Order to show cause discharged and proceeding dismissed.

but because I know it must have embarrassed you and hurt you to think that a man to whom you had always shown great kindness and courtesy, should turn out to be a snake in the grass.  I really and truly am genuinely sorry about this, and whether you feel that you must take steps against me or not, I wish that we could remain friends, for I do respect you and honor you more than any judge or lawyer I have ever known.

Yours very truly
Samuel T. Bull.