[No. 2819–2.   Division Two.   February 21, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM LLOYD BJELLAND, *Appellant.*

*W. Stephen Gregorich,* for appellant (appointed counsel for appeal).

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

PETRIE, J.—William Lloyd Bjelland appeals from his conviction of unlawful possession of a controlled substance with intent to deliver. The controlled substance included a slip of 80 percent heroin found in a dresser drawer in the master bedroom of his residence. He asserts (1) the information filed against him should be dismissed because he was not brought to trial within the time constraints imposed by CrR 3.3; and (2) if the information is not dismissed, he should be granted a new trial because the trial court prohibited him from presenting material evidence which would tend to establish his innocence of the crime charged. We agree with his first contention and remand this cause with direction to dismiss the information. Nevertheless, because our opinion on the evidentiary issue may prove to be beneficial to the trial bench and bar, we decide Mr. Bjelland's second contention and declare our unanimous disagreement with it.

The defendant first appeared in court on April 8, 1976, and trial was set for June 21. On this latter date, on the basis of a motion filed by his then retained counsel, the criminal presiding judge in Pierce County reset trial for September 29 in order to permit Mr. Bjelland to participate in a drug dependency evaluation program. One day before trial was scheduled to commence, his counsel advised the prosecution that Mr. Bjelland would enter a plea of guilty to the information. No formal continuance or extension of a trial date was sought or noted, but the cause was docketed for taking the defendant's plea on October 7.

Instead of appearing in court as agreed, however, Mr. Bjelland's counsel, on October 6, presented to the deputy prosecuting attorney assigned to the case a notarized affidavit executed on September 28 by a person who designated herself as "Pam Harris #161." The affidavit declares on its face that 3 days before Mr. Bjelland was arrested on the drug charges, the affiant surreptitiously entered Mr. Bjelland's bedroom and placed a packet of heroin in his dresser drawer. The affiant averred that she hid the packet after being "directly and verbally encouraged [to do so] by her prospective employer," a deputy sheriff of Pierce County, in order that it "would later be discovered by police agents conducting a search."

Armed with this "evidence," defense counsel indicated to the prosecution his unwillingness to permit the defendant to enter a plea of guilty. Both counsel immediately presented the situation informally in chambers to another judge who had subsequently assumed the duties of criminal presiding judge. He refused to set a new trial date until Mr. Bjelland filed a written waiver of the speedy trial provisions of CrR 3.3. Intermittently thereafter counsel discussed the problem, but no formal action was taken until January 6, 1977, when a third criminal presiding judge set trial for January 19 before a fourth judge, who ultimately presided at trial.

On January 18, the defendant filed a motion to dismiss based in part on the contention that he had not been provided a speedy trial pursuant to CrR 3.3.[1] In a pretrial evidentiary hearing, the trial court heard testimony bearing on

---

[1]At the time this case was tried, CrR 3.3(a), (c), (e), and (g) provided as follows:

"(a) . . . It shall be the responsibility of the court to insure to each person charged with crime a speedy trial in accordance with the provisions of this rule.
" . . .

"(c) . . . Criminal trials shall take precedence over civil. A defendant unable to obtain pretrial release shall have priority and the charge shall be brought to trial within 60 days following the preliminary appearance.
" . . .

"(e) . . . Continuances or other delays may be granted as follows:

the speedy trial issue, denied the defendant's motion to dismiss, and then proceeded to trial.

Following presentation of the State's case in chief, defense counsel informed the trial court that he had reason to believe his proposed witness, Pam Harris (the aforementioned affiant) would not honor the subpoena which had been served upon her. He further informed the court of his belief that a deputy sheriff had been discouraging the witness to testify. Accordingly, counsel sought a continuance to insure her presence as a defense witness. The trial court denied the continuance, but recessed court over the weekend after having secured the witness' attendance in court and after having appointed counsel for her.

The following Monday morning her counsel informed the court as follows:

> I can advise the Court that she has every intention of refuting each and every allegation contained in the affidavit. She will testify, if required to, that she was pressured into making the affidavit, knowing that it was false, the pressure being imposed by the defendant, the defendant's ex–wife, and one other person, and I forget who that is, but not a party to the lawsuit here. And that she will stick to that story steadfastly, that she was pressured into it, and the affidavit is false.

From the colloquy which followed, it is clear that defense counsel wanted to elicit from the witness the "facts" set

---

"(1) On motion of the defendant on a showing of good cause.

"(2) On motion of the prosecuting attorney if:

"(i) the defendant expressly consents to a continuance or delay and good cause is shown; or

"(ii) the state's evidence is presently unavailable, the prosecution has exercised due diligence, and there are reasonable grounds to believe that it will be available within a reasonable time; or

"(iii) required in the due administration of justice and the defendant will not be substantially prejudiced in the presentation of his defense.

"(3) The court on its own motion may continue the case when required in the due administration of justice and the defendant will not be substantially prejudiced in the presentation of his defense.

"...

"(g) . . . A criminal charge not brought to trial as required by this rule shall be dismissed with prejudice."

forth in her affidavit or, if she chose to repudiate those "facts," an opportunity to impeach her with the affidavit. Confronted with this development, the trial court granted the witness transactional immunity within the limits authorized by RCW 10.52.090 (CrR 6.14) and directed defense counsel to present an offer of proof, through her testimony, in the absence of the jury. The offer expressly repudiated each material aspect of her affidavit and completely supported her counsel's earlier assertion to the court, and the defendant presented no witnesses to refute or counter the witness' assertion that she was "pressured" into making the affidavit. The court excused the witness and directed no "further reference be made to her in the trial."

We consider first the speedy trial issue. On appeal, the defendant concedes that he cannot disavow his counsel's motion for a continuance which was filed and granted on June 21, 1976. *See State v. Cunningham,* 18 Wn. App. 517, 569 P.2d 1211 (1977); *State v. Franulovich,* 18 Wn. App. 290, 567 P.2d 264 (1977). Nevertheless, he contends the failure to bring him to trial within 90 days of October 7 violates his speedy trial rights granted under CrR 3.3 and requires dismissal of the criminal charges pursuant to CrR 3.3(g).

█ We have previously held that a waiver of the rule–created speedy trial right, in the absence of a clearly expressed intent to the contrary, does not constitute an unlimited general waiver. *State v. Pomeroy,* 18 Wn. App. 837, 573 P.2d 805 (1977). In the case at bench, neither the defendant nor his counsel, expressly or impliedly, waived any presently asserted rights granted by the speedy trial rule. The record is clear that on October 7 the court before whom counsel appeared refused to set a trial date and no effort was made by the court or the prosecuting attorney to bring the defendant to trial until the prosecution filed a motion for trial setting on January 6, 1977.

We find no reason to depart from our previous interpretation of CrR 3.3—that the waiver of the procedural right to speedy trial, absent a contrary intent, is effective only

until the date of the trial contemporaneously or subsequently set by the court. *State v. Pomeroy, supra.* Thus, the defense waiver of June 21 extended no later than October 7. *See also State v. Aleshire,* 89 Wn.2d 67, 568 P.2d 799 (1977). Because trial did not commence until January 19, 1977, this cause must be remanded to the trial court with direction to dismiss the charges filed against Mr. Bjelland.

Notwithstanding this decision, we turn to the defendant's other contention on appeal.

Reduced to its simplest form, the defendant's contention is really an assertion that he was denied an opportunity to present Pam Harris' affidavit as substantive evidence in support of his defense. Although the defendant's trial counsel initially declared that the witness would testify in accordance with the information in the affidavit, he subsequently advised the court that he only intended to present the witness, have her identify her signature on the affidavit, and request that it be admitted as a defense exhibit. At that point, the defendant's theory changed from an attempted impeachment following "surprise" testimony, to a request that he be permitted to introduce a hearsay document (over an already asserted prosecutorial objection) admissible as a statement against the penal interest of the declarant.

We hold that the proposed evidence was not admissible on either theory.

On the impeachment theory, there was simply no presentation to a jury to which the defendant could claim "surprise" and which he should, therefore, be given the opportunity to attack or destroy. In any event, the impeaching evidence would be incompetent to prove substantive "facts" encompassed in such evidence. *State v. Fliehman,* 35 Wn.2d 243, 212 P.2d 794 (1949).

On the penal interest theory, the proposed evidence does not meet the minimal criteria necessary to mandate its use:

(1) the declarant's testimony is otherwise unavailable;
(2) the declaration is an admission of an unlawful act;

(3) the declaration is inherently inconsistent with the guilt of the accused; and (4) *there are such corroborating facts and circumstances surrounding the making of the declaration as to clearly indicate that it has a high probability of trustworthiness.*

(Italics ours.) *State v. Gardner,* 13 Wn. App. 194, 198–99, 534 P.2d 140 (1975). *See State v. Young,* 89 Wn.2d 613, 574 P.2d 1171 (1978).

Ms. Harris' affidavit and her subsequent declaration to the court probably satisfy the first three criteria, but the trial court concluded that the affidavit failed utterly to meet the fourth criterion. Rather than indicating a "high probability of trustworthiness," the surrounding circumstances negate any degree of trustworthiness. We find no error in the trial court's ruling to excuse Ms. Harris as a witness and to prohibit any further reference to her during the trial.

In view of our holding on the speedy trial issue, the judgment and sentence are reversed, and this matter is remanded with direction to dismiss the information.

PEARSON, C.J., and SOULE, J., concur.